<hr />

### SIMONS v. CITY OF EUGENE et al.

#### (Circuit Court, D. Oregon. February 24, 1908.)

#### No. 3,077.

1. MUNICIPAL CORPORATIONS—CONTRACTS — PAYMENT FOR SERVICES — CITY'S DEBT LIMIT.

Where a city's charter authorized a bond issue for the construction of a power plant and lighting system, and the city contracted for engineer's services payable out of the proceeds of an authorized issue of bonds for such purpose, it was no objection to the validity of such a contract that the city's general indebtedness already exceeded the charter limit.

[Ed. Note.—Constitutional and statutory limitation of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.]

2. SAME—FAILURE TO PROVIDE FUNDS—GENERAL LIABILITY.

A city having express authority to issue bonds to defray the cost of a lighting and power plant, pursuant to a vote of the taxpayers, employed certain engineers to make permanent surveys and to complete plans and specifications for the plant, their services to be paid for out of the moneys to be raised by sale of the bonds. The bonds were issued, but were not sold, for want of bidders, whereupon the city resubmitted the question of bond issue to the voters without providing for the payment of the engineers' services, and, the vote being in the negative, warrants were issued to the engineers payable out of the city's general fund. *Held*, that the city was at fault in not pursuing the sale of the bonds under its rightful authority acquired by the first vote until it had satisfied the demand of the engineers, and was therefore liable for payment of such demand out of the general fund.

### In Equity.

At a special election duly authorized, and held in the city of Eugene on September 11, 1905, the question whether the city should be empowered to issue city bonds in the amount of $100,000 with which to pay the costs and expenses in the purchase or construction and equipment of a complete electric light and power plant and system for the city was submitted to the qualified voters of the municipality, and it was determined by a majority vote in favor of the issuance of such bonds. Later, on October 11, 1905, the city council determined by resolution, regularly adopted, to construct an electric light and power plant for the city, and thereupon directed and authorized its committee on fire and water "to cause permanent surveys to be made of a proper canal and power plant therefor, and a right of way for a transmission line from such power plant to the city of Eugene; and to

cause complete plans and specifications of said canal, power plant, and transmission line to be made in detail as a basis upon which to call for bids for the construction and building thereof, * * * to employ an engineer or engineers to make said surveys, plans, and specifications, and to expend such sums of money therefor as might be necessary and proper to complete the same." Pursuant to the authority conferred by virtue of said resolutions, the committee on fire and water, in behalf of the city, entered into a contract with the defendants, Kelsey and Young, whereby the latter agreed to make permanent surveys, and complete and detailed working plans and specifications, for an entire electric light and power plant, including transmission line, for the consideration of $2,900, which said sum the city agreed to pay to Kelsey and Young, less the sum of $450 which had been paid them prior to the consummation of the formal contract. It was further agreed that payment should be made when sufficient funds were realized for the purpose from the sale of bonds; it being understood that the city would proceed with all reasonable dispatch with the issuance of said bonds and the sale and disposal thereof. In due time Kelsey and Young performed all the conditions of the contract agreed to be performed upon their part, and in recognition thereof, and in payment for such services, the city, on May 14, 1906, issued to Kelsey and Young its certain warrants drawn against the general fund of the city, aggregating the amount of the agreed consideration, namely, $2,450. The contract was entered into in good faith by both parties. Subsequently, to wit, on October 30, 1905, the city advertised the sale of bonds so authorized to be issued by vote of the qualified electors of the municipality, to bear interest at the rate of 4 per cent., but without success—no bids being made therefor. Later, on June 2, 1906, the city again submitted to the qualified voters the question of whether bonds should issue for the contemplated improvement, which failed to receive a majority vote. Kelsey and Young did not at any time assent to the rate of interest affixed to the bonds sought to be sold; nor did they consent to the second submission of the question of issuing such bonds to the voters. Further than these efforts, the city has made no attempt to dispose of bonds for the purpose of obtaining funds with which to meet its obligation to Kelsey and Young. At all times while the transactions between the city and Kelsey and Young were taking place, the city was indebted in excess of $3,000.

John M. Pipes and George A. Pipes, for complainant.
Williams, Wood & Linthicum, for Kelsey and Young.

WOLVERTON, District Judge (after stating the facts as above). In view of the facts set out in the foregoing statement, the complainant has sued to enjoin the city of Eugene from paying the warrants issued, and the defendants Kelsey and Young from pressing payment thereof, on the ground that at the time of entering into said contract the indebtedness of the city of Eugene was in excess of $3,000.

It may be premised, as the fact is, that the city and the defendants, Kelsey and Young, entered into the contract in question in entire good faith, both parties fully supposing that money would be realized in due time from bonds issued under the authority that the city had acquired through the vote of the qualified electors of the city, and the obligation of the city fully met in that way. It may be further premised that the contract, when entered into, was perfectly valid, for it contemplated that payment should be made out of the special fund to be provided for that purpose, and it could make no difference as to this whether the city was indebted beyond its charter limit or not. So it must result, if the payment of the warrants is to be enjoined, that Kelsey and Young, without any fault whatever upon their part, will lose

the entire consideration for their services rendered the city. It should be a plain case, well grounded upon sound legal principles and rules, to warrant the court in visiting such an injustice upon innocent parties.

Section 37 of the charter of the city of Eugene inhibits the council from in any way creating or contracting an indebtedness which shall singly or in the aggregate exceed the sum of $3,000, but with the proviso, "except as in this act otherwise specially provided." Section 95 empowers the city to purchase or construct an electric lighting system for lighting the streets and public buildings; and section 108 authorizes it to issue bonds for the purpose of raising money with which to defray the costs and expenses of the purchase or construction of such system. But it is made a condition that no such bonds shall be issued until the question of their issue, specifying the amount, shall be submitted to a vote of the qualified electors of the city, and a majority of the vote be cast in favor thereof. These are all the provisions of the charter affecting the present controversy that need be referred to. The city, as I must assume from the record, had proceeded in due accord with the requirements of the charter in providing the proper fund for meeting the costs and expenses of the contemplated improvements up to the time of entering into the contract with Kelsey and Young. It had been duly authorized by a "majority of the qualified electors to issue the appropriate amount of bonds," so that the fund, to all intents and purposes, had really been provided, and the city was fully and duly authorized to enter into the contract with Kelsey and Young set out in the statement. The bonds never issued, however, and the money was never forthcoming, so that the city finally issued the warrants in controversy against the general fund, and the question is, are these warrants valid or void? If void, their payment should be enjoined. Otherwise, they should be paid in due course.

It appears that the city, in the first place, was unable to dispose of the bonds authorized; for what especial reason does not appear—possibly because the interest they were to bear was too low. At any rate, they were not salable. This may not have been a fault of the city. In the second place, the city resubmitted the question of bond issue for the contemplated improvement to the vote of the electors. There is no explanation as to why it did this. It is not averred, nor is it claimed, that the previous authorization was invalid for any purpose. Perhaps it was thought that it was good policy so to do. If so, the city council should have been sure that the obligations and indebtedness theretofore incurred with reference to the proposed fund should be paid, before relinquishing its previously acquired authority. It owed this plain duty at least to Kelsey and Young, having solemnly contracted to pay them out of that fund. When, however, the second vote was taken, and resulted as it did, the council was shorn of all authority further to issue bonds with a view to raising money in that way. The case, I am impressed, falls within the principle of North Pacific Lumbering and Manufacturing Co. v. East Portland, 14 Or. 3, 12 Pac. 4, Little v. City of Portland, 26 Or. 235, 37 Pac. 911, and Jones v. City of Portland, 35 Or. 512, 58 Pac. 657. In the latter case it is said, the court speaking through Mr. Justice Bean:

"Whatever confusion there may be in the authorities elsewhere, the hold-of this court is that, where the expense of improving a street in a city is to be paid from a special fund to be raised by an assessment on the abutting property, a failure of the municipality to comply with any of the requirements of the charter essential to supply such fund, * * * or any unreasonable delay in enforcing such provisions or collecting and paying over the money, * * * gives the contractor a right of action ex delicto against the corporation for damages, in which he is entitled to recover the amount due under the contract, with interest, notwithstanding a provision in the contract that he shall look for payment only to the special fund, and that he will not require the municipality, by any legal process or otherwise, to pay for the same out of any other fund."

The cases cited bear a very close analogy to this one, and are controlling, as this court is constrained to adopt the doctrine of the state, it having been long in vogue.

The city of Eugene in the present controversy was most assuredly at fault in not pursuing the sale of bonds under its rightful authority acquired by the first vote of the electors of the city until it had at least satisfied the demand of Kelsey and Young. Having satisfied that, it would have been at full liberty to adopt another policy, as it saw fit, and no detriment or hurt could have come to the claimants. There was therefore a dereliction of duty on the part of the city as it pertains to Kelsey and Young, which rendered their demand actionable and the city liable, so that it must render account out of its general fund.

The decree of the court will therefore be that the complainant's bill be dismissed.